**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

GLORIA BUCZYNSKI,          )
                                                )
          Plaintiff,          )
                                                )
      v.                     )
                                                )     Civil Action No. 08-189 Erie
MICHAEL J. ASTRUE,         )
Commissioner of Social Security,  )
                                                )
          Defendant.       )

## MEMORANDUM OPINION

McLAUGHLIN, SEAN J., J.

       Plaintiff, Gloria Buczynski, commenced the instant action on June 27, 2008 pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social Security denying her claims for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §401 *et seq*. Plaintiff filed an application for DIB on June 17, 2004, alleging that she was disabled since January 1, 2001 due to back surgery and disk disease (Administrative Record, hereinafter "AR", at 13, 62-64, 114). Her application was initially denied, and Plaintiff requested a hearing before an administrative law judge ("ALJ") (AR 47). A hearing was held on July 7, 2006, and following this hearing, the ALJ found that Plaintiff was not disabled at any time through the date of the decision, and therefore was not eligible for DIB benefits (AR13-20). Plaintiff's request for review by the Appeals Council was denied (AR 5-7), rendering the Commissioner's decision final under 42 U.S.C. § 405(g). The instant action challenges the ALJ's decision. Presently pending before the Court are cross-motions for summary judgment. For the reasons set forth below, we will deny Plaintiff's motion and grant Defendant's motion.

### I. BACKGROUND

       Plaintiff was born on October 1, 1962, and was forty-three years old on the date of the ALJ's decision (AR19, 62, 641). She has a 10th grade education and earned a GED and has past relevant

work history as a screw machine operator, a plastic toy assembler, and an injection molding machine operator (AR 19, 115, 656-67).

On April 16, 1996, Dr. Zerbonia found Plaintiff to have a small avulsion fracture in her foot due to a twisting injury (AR 367). On October 7, 1996, Dr. Gallagher examined Plaintiff's right ankle after she fell down the steps and found a barely discernable small avulsion fracture and determined that it had healed satisfactorily, although, if pain persisted there was the possibility of other avulsion fractures (AR 366).

Plaintiff stated that her back injury occurred on January 14, 1998, when she was shoveling metal shaving out of her machine at work and she felt a sharp pain in her back that had progressively gotten worse and spread to her legs (AR 187, 193).

On January 22, 1998, an exam of Plaintiff's lumbar spine by Dr. John Gallagher was sent to Dr. John Kalata indicating that the exam showed no evidence of fracture, dislocation or bony destruction and all the disc spaces were well maintained (AR 150). Plaintiff was referred to physical therapy (AR 152, 169).

On April 24, 1998, Plaintiff underwent an evaluation of her femoral artery which found there was good flow present and a minimal amount of plaque (AR 363). On March 24, 1999, Dr. Ayos found Plaintiff's chest x-ray was normal and showed no heart or lung abnormalities (AR 362).

On May 8, 1998, Physical Theripist Laura Conley reported to Dr. Thomas that Plaintiff was having improvement and noted decreased pain intensity with the use of a cortizone shot and moist heat, rating her pain levels to be at 2/10 and 4/10, however, at worst they increased to 8/10 (AR 153). On June 11, 1998, Ms. Conley reported that Plaintiff had sporadically attended physical therapy sessions and Plaintiff reported her pain level to be at 5/10 (AR 152).

On June 12, 1998, Dr. Thomas reported that Plaintiff complained of favoring her right leg; however, a lumbar MRI failed to show any significant disc herniation and there was no clear cut evidence of objective disc injury (AR 170).

On February 18, 1999, Plaintiff was examined by Dr. Viscusi who found that there was not any objective findings to go along with Plaintiff's subjective complaints of back pain and that her veracity was somewhat questionable in light of the physical examination (AR 183). He concluded that she was able to return to a medium duty position with lifting limited up to 50 pounds (AR 183).

On March 8, 1999, Dr. Flitter saw Plaintiff and recommended microsurgical discectomy due to the severity of her pain (AR 293). On April 1, 1999, Plaintiff underwent decompression surgery performed by Dr. Flitter (AR 185-86). Certified Physician Assistant Harry Stauffer found Plaintiff to have an antalgic gait, difficulty climbing on and off the exam table and difficulty walking on her heels and toes, and his impression was right lumbosacral radiculopathy (AR 188). Plaintiff's diagnosis of right lumbosacral radiculopathy was confirmed by Dr. Flitter in the examination of a specimen of frayed cartilaginous tissue that was determined to be degenerating cartilage from disk L5-S1 (AR 190).

On October 21, 1999, Plaintiff stated to Dr. John Lyons that the surgery had helped the back pain, she did not have pain on the left side and the right side was improving, however, there was no difference to her legs (AR 193). Plaintiff complained of pain in her thighs and numbness occurring in the right leg more than the left (AR 194). Dr. Lyons determined Plaintiff to have degenerative disc disease with a fair to guarded prognosis (AR 200-201). Dr. Lyons' opinion was that Plaintiff's symptoms were not consistent with being caused by external mechanical trauma, but rather were consistent with biologic deterioration (AR 201-202).

On January 18, 2000, Dr. Flitter noted that Plaintiff wanted to try return to light duty work despite her increasing leg pain (AR 257). Dr. Flitter examined Plaintiff on April 10, 2000, and determined that her pain was not sufficiently severe at that point to consider additional surgery (AR 246). On November 28, 2000, Plaintiff complained of back and right lower extremity pain and Dr. Flitter found her to resist straight leg raising and have diminished Achilles reflex on the right side (AR 216). On December 9, 2000, Dr. Flitter examined Plaintiff and noted that her MRI was essentially unremarkable and she had mild tenderness in the lumbar spine but no spasm (AR 213).

On July 4, 2000, Plaintiff presented to the emergency department of Saint Vincent Health Center complaining of chest pain (AR 351). A chest exam was performed and Dr. Myers reported that no active chest disease was detected (AR 352).

On November 17, 2000, Plaintiff was seen by Dr. Marcus who examined Plaintiff's left foot and found no fracture or dislocation from an object dropped on her toe (AR 349).

Dr. John Kalata examined Plaintiff on July 7, 2001, and noted that Plaintiff's chief complaint was low back pain (AR 328). Dr. Kalata reported that Plaintiff walked very slowly, exhibited a limp and favored her left side (AR 328). On physical exam, Dr. Kalata found Plaintiff's deep tendon reflexes were 2/4, forward bending was at 45º, backward at 5º, laterally at 10º and rotationally at 30º (AR 330). Dr. Kalata stated that her answers appeared to be truthful (AR 328). He diagnosed Plaintiff with chronic low back pain, discogenic disease and radiation neuropathy to both legs and concluded she was limited to one hour or less of standing and four hours of sitting (AR 330-32).

On November 30, 2001, Plaintiff was examined by Dr. David Cooper who reported that Plaintiff's x-rays revealed degeneration of the L4-L5 and L5-S1 discs, her range of motion was markedly limited, straight leg test was positive for pain in the right leg, and there was tenderness from L1 through S1 (AR 383-85). Dr. Cooper found Plaintiff to have lumbosacral sprain/strain with a poor prognosis and opined that she could only perform sedentary work (AR 385). Dr. Cooper noted that Plaintiff was taking six hydrocodone pills per day, was addicted to Vicodin, and should be weaned off and placed on a non-narcotic medication before returning to sedentary work (AR 386).

On December 3, 2001, Plaintiff was examined by Dr. DeMeira who reported that although Plaintiff exhibited pain symptoms, MRI scans were normal and there was at most, minimal indication of degenerative disc disease (AR 343). Dr. DeMeira diagnosed Plaintiff with chronic lumbago and right-sided, S1 chronic radiculopathy and did not recommend any new surgical procedure (AR 344).

Plaintiff presented to the Hamot Medical Center Emergency Room on February 2, 2003, complaining of chest pains and bad heartburn (AR 406). Dr. Simonian saw Plaintiff and

recommended that she be admitted for evaluation of chest pain, however, Plaintiff refused. (AR 408). Dr. Simonian noted that Plaintiff smoked one and a half packs of cigarettes per day and drank at least seven beers a day, although she could only tolerate four beers the previous day (AR 406). Dr. Simonian diagnosed Plaintiff with chest pain of unknown origin and alcoholism, and instructed her to take Nexium and baby aspirin (AR 408).

Dr. Isam Khoja examined Plaintiff on September 24, 2003, and reported that Plaintiff had severe stiffness in her spine and muscle spasms in the lumbar area, however, he was unsure as to the legitimacy of her complaints of worsening back pain (AR 416-17). Dr. Khoja opined that Plaintiff's problem could be due to the inflammatory process, and recommended that she start Celebrex and Flexeril for the inflamation and Lortab for the pain (AR 417). On October 8, 2003, Dr. Khoja opined that Plaintiff would not achieve a complete recovery and should be restricted to light duty work (AR 414). On February 9, 2004, Dr. Khoja reported that Plaintiff stated her back pain had lessened a little bit (AR 412). Dr. Khoja discussed the possibility of disk or fusion surgery, but indicated that Plaintiff would have to stop smoking first (AR 412).

On July 6, 2004, Plaintiff was treated for a fracture to her left wrist suffered from a fall cause by her legs giving out (AR 424-25). Plaintiff underwent the placement of pins and a cast to treat her fracture (AR 424). When seen by Dr. Mason on August 20, 2004, Plaintiff had no complaints about her left wrist, and x-rays revealed early union of the fracture and acceptable alignment (AR 422). Dr. Mason recommended that Plaintiff avoid heavy physical activities and use a splint for heavier activities (AR 422). Dr. Mason suggested that Plaintiff follow up for a re-examination and x-rays (AR 422). Plaintiff, however, failed to show for the appointment (AR 422).

On November 17, 2004, Plaintiff saw Dr. Ben Bongutu, who prescribed a cane to help Plaintiff ambulate and continued her on Celebrex and Lortab (AR 448). Dr. Bongutu filled out a state Employability Assessment Form on April 11, 2005, finding Plaintiff to be employable (AR 508-09).

On April 22, 2005, Dr. Steven Thomas performed an independent medical evaluation of Plaintiff (AR 631). Dr. Thomas noted that Plaintiff complained of constant low back pain extending into her right extremity (AR 633). Dr. Thomas found Plaintiff to have an antalgic gait and a mild tendency toward collapse in multiple muscle groups on the right lower extremity (AR 634-35). Dr. Thomas concluded that Plaintiff had postlaminectomy pain syndrome and degenerative disc disease (AR 635). As to the Plaintiff's functional capacity, Dr. Thomas opined that she was capable of performing sedentary work that was limited in lifting, bending and standing (AR 636).

Dr. Dilip Kar, a State agency medical consultant, reviewed Plaintiff's medical records on September 2, 2005 (AR 429-36). Dr. Kar opined that Plaintiff would be able to stand at least two hours and sit at least six hours in an eight-hour work day (AR 430). Dr. Kar found Plaintiff's complaints of pain partially credible (AR 434).

On February 2, 2006, Plaintiff was examined by Dr. Baumgartner who found Plaintiff had normal deep tendon reflexes and strong and intact sensation (AR 543).

At the hearing, Plaintiff and the vocational expert, Joseph Kuhar testified. Plaintiff stated that her back hurt constantly, she broke her arm because her legs gave out, her wrist hurt, she had numbness in her hand and that she broke her ankle and could barely walk on it (AR 644). Plaintiff claimed she did not seek treatment for her ankle injury due to an inability to afford treatment (AR 645). Plaintiff testified that she could only sit at the most for one half hour and stand for ten minutes (AR 646). Plaintiff stated that she occasionally cooked for her son, although he took care of the laundry and shopping (AR 647). Plaintiff indicated that she was able to shower and dress herself (AR 648).

The vocational expert opined that a person who was limited in the ability to balance, kneel, crouch, crawl, climb and who needed the option to sit and stand for one to two minutes every hour, would not be able to perform any of the jobs that Plaintiff had previously worked (AR 658). The vocational expert stated that there would be jobs in the national and local economy that would meet the hypothetical functional limitations such as routing clerk, surveillance system monitor and food

sorter (AR 658-59). The vocational expert stated that if the functional limitations were such that the person had to sit and stand for fifteen minutes a day and avoid postural maneuvers, the person could still perform the jobs previously listed (AR 659-61). The vocational expert opined that if a limitation of the use of one hand in fine motor skills were added, that would only limit the hypothetical person from performing the food sorter position (AR 661).

Following the hearing, the ALJ issued a written decision which found that Plaintiff was not entitled to a period of disability or DIB within meaning of the Social Security Act (AR 13-20). Her request for an appeal with the Appeals Council was denied rendering the ALJ's decision the final decision of the Commissioner (AR 5-7). She subsequently filed this action.

## II. STANDARD OF REVIEW

The Court must affirm the determination of the Commissioner unless it is not supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence does not mean a large or considerable amount of evidence, but only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 564-65 (1988) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)); *see Richardson v. Parales,* 402 U.S. 389, 401 (1971). It has been defined as less than a preponderance of evidence but more than a mere scintilla. *See Richardson,* 402 U.S. at 401; *Jesurum v. Secretary of the United States Dept. of Health and Human Servs.,* 48 F.3d 114, 117 (3d Cir. 1995).

## III. DISCUSSION

A person is "disabled" within the meaning of the Social Security Act if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner uses a five-step evaluation process to determine when an individual meets this definition:

> In the first two steps, the claimant must establish (1) that he is not engaged in "substantial gainful activity" and (2) that he suffers from

a severe medical impairment. *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987). If the claimant shows a severe medical impairment, the [Commissioner] determines (3) whether the impairment is equivalent to an impairment listed by the [Commissioner] as creating a presumption of disability. *Bowen,* 482 U.S. at 141. If it is not, the claimant bears the burden of showing (4) that the impairment prevents him from performing the work that he has performed in the past. *Id.* If the claimant satisfies this burden, the [Commissioner] must grant the claimant benefits unless the [Commissioner] can demonstrate (5) that there are jobs in the national economy that the claimant can perform. *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985).

*Jesurum*, 48 F.3d at 117.

The ALJ found Plaintiff to have the following severe impairments: degenerative disc disease of the lumber spine with radiculopathy, status post lumbar discectomy, hypertension, and status post fracture of the arm and ankle (AR 15). The ALJ determined that Plaintiff's impairments did not meet or medically equal any of the listed impairments (AR 15-16). The ALJ found that Plaintiff could perform sedentary work where she could sit or stand at will for up to fifteen minute periods, not involving any balancing, stooping, kneeling, crouching, crawling or climbing (AR 16). The ALJ also determined that Plaintiff's allegations regarding the intensity, duration and limiting effects of her symptoms were not entirely credible (AR 16). At the final step, the ALJ concluded that Plaintiff could perform the jobs cited by the vocational expert at the administrative hearing (AR 19-20). Again, I must affirm this determination unless it is not supported by substantial evidence. *See* 42 U.S.C. §405(g).

Plaintiff challenges the ALJ's step three determination that her impairments did not meet or medically equal one of the listed impairments. Plaintiff argues in conclusory fashion that "[i]t is clear based on medical evidence and testimony" that the impairments meet the listings. *See* Plaintiff's Brief p. 6. However, she points to no evidence in the record to support her conclusion. The ALJ found that the Plaintiff's severe impairments of degenerative disc disease, status post lumbar discectomy, hypertension and status post fracture of the arm and ankle did not meet or medically equal Listing 1.02, Major Dysfunction of a Joint(s), Listing 1.04, Disorders of the Spine, or Listing 4.03, Hypertensive Cardiovascular Disease (AR 15-16). The ALJ noted that there was

little clinical documentation showing a significant impairment associated with Plaintiff's ankle or arm (AR 16). Similarly, as to the claims of hypertension, there was absent evidence showing any organ damage or serious symptoms such as dizziness, lightheadedness or syncope (AR 16). As to Plaintiff's spinal disorders, the ALJ observed that the record did not indicate any significant neurological loss or impairment in motor functions, and that Dr. Khoja and Dr. Baumgartner both found Plaintiff to have normal sensation and reflexes (AR 16). Finally, the record did not contain any report or opinion that Plaintiff's impairments met or medically equaled the Listings. In viewing the record as a whole, substantial evidence supports the ALJ's determination that Plaintiff's impairments did not meet the listing requirements.

Plaintiff also challenges the ALJ's credibility determination. According to the regulations, there is a two-step process an ALJ must follow in evaluating a claimant's subjective complaints. First, the ALJ must determine whether there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the individual's pain or other symptoms. *See SSR* 96-7p, 1996 WL 374186, at *2. If such an impairment exists, then the ALJ must determine the extent to which the claimant's allegations are credible by evaluating "the intensity and persistence of the pain or symptom, and the extent to which it affects the [claimant's] ability to work." *Hartranft v. Apfel,* 181 F.3d 358, 362 (3d Cir. 1999).

In making this determination, the ALJ should consider the objective medical evidence as well as other factors such as the claimant's own statements, the claimant's daily activities, the treatment and medication the claimant has received, any statements by treating and examining physicians or psychologists, and any other relevant evidence in the case record. *See* 20 C.F.R. § 416.929(c); *SSR* 96-7p, 1996 WL 374186 at *2. In this regard, there must be objective evidence of some condition that could reasonably produce the alleged pain or symptoms but there need not be objective evidence of the actual pain or symptoms. *See Mason v. Shalala*, 994 F.2d 1058, 1067 (3d Cir. 1993); *Green v. Schweiker*, 749 F.2d 1066, 1071 (3d Cir. 1984). "An ALJ must give serious consideration to a claimant's subjective complaints of pain, even where those complaints are not supported by objective medical evidence." *Mason*, 994 F.2d at 1067 (citing *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir.

1985)).  Further, "[w]here medical evidence does support a claimant's complaints of pain, the complaints should then be given 'great weight' and may not be disregarded unless there exists contrary medical evidence." *Mason*, 994 F.2d at 1067; *see also Carter v. Railroad Retirement Bd.*, 834 F.2d 62, 65 (3d Cir. 1987); *Ferguson*, 765 F.2d at 37.  Finally, the ALJ as the finder of fact can reject, partially or fully, subjective complaints if he finds them not credible based on other evidence in the record.  *See Baerga v. Richardson*, 500 F.2d 309, 312 (3rd Cir. 1974).  The ALJ is empowered to evaluate the credibility of witnesses and his determination is entitled to deference by this Court. *See Van Horn v. Schweiker*, 717 F.2d 871, 873 (3rd Cir. 1983).

Plaintiff argues that the ALJ erred in making the credibility assessment because he failed to point to any specific statement made by Plaintiff that is contradicted by the medical records.  I find no error in the ALJ's credibility assessment.  The ALJ acknowledged that in his determination of Plaintiff's RFC, he must consider all symptoms, including pain, and the extent to which these symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. §§ 404.1529, 404.1527 and *SSR* 96-2p, 96-4p, 96-5p, 96-6p, 96-7p (AR 16).  The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but the statements concerning intensity, duration and limiting effects of those symptoms were not entirely credible (AR 16).  In making his determination, the ALJ considered the medical evidence of record, as well as Plaintiff's testimony as to her functional restrictions (AR 16-18).  He noted Plaintiff testified that she experienced low back pain which radiated down her right side resulting in leg numbness, that back surgery in 1999 worsened her condition and that she now occasionally used a cane (AR 16).  He further noted her testimony that she had pain associated with the fracture of her left hand and ankle and took Vicodin and Celebrex without any serious side effect (AR 16-17).  He indicated that she tended to minimize any serious problems with substance abuse when questioned (AR 16-17).

The ALJ concluded that Plaintiff's only serious limitations involved her chronic low back pain and radiculopathy associated with degenerative disc disease (AR 17).  He observed that while Plaintiff did have documented pain and restricted range of motion, the record did not indicate that

her pain and restrictions would preclude her from engaging in sedentary work (AR 17). The ALJ pointed to the reports of Dr. Cooper, Dr. Demeira, Dr. Bongutu and Dr. Khoja that indicated she was capable of performing sedentary work, exhibited pain behavior but did not require more surgery, and had less pain from taking Vicodin and Celebrex (AR 17). The ALJ further noted that there was little documentation regarding Plaintiff's complaints associated with her wrist, ankle and hypertension (AR 17-18). The ALJ also pointed out that no physician had reported any sign of serious muscle atrophy, which was consistent with the Plaintiff's daily living questionnaire and tended to show that she was more active than she alleged at the hearing (AR 17). The ALJ also observed in his overall credibility assessment, that Plaintiff tended to minimize her use of alcohol over the years (AR 18). As a result, the ALJ properly weighed the Plaintiff's statements concerning the intensity, duration and limiting effect of her pain with the objective medical report and concluded that her statements were not entirely credible.

Next, Plaintiff challenges the ALJ's findings as to her residual functional capacity. An ALJ must consider all relevant evidence when determining an individual's residual functional capacity. *See* 20 C.F.R. § 404.1545(a); *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3rd Cir. 2000). "'Residual functional capacity is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett,* 220 F.3d at 121, quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3rd Cir. 1999); *see also* 20 C.F.R. § 404.1545(a). An individual claimant's RFC is an administrative determination expressly reserved to the Commissioner. 20 C.F.R. § 416.927(e)(2). Social Security Ruling ("*SSR*") 96-5p provides:

> The assessment is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomatology, an individual's own statement of what he or she is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of the evidence.

*SSR* 96-5p (1996), 1996 WL 374183 *5.

Plaintiff contends that the ALJ erred in concluding she had a residual functional capacity that allowed her to lift and carry up to ten pounds occasionally, with walking and standing occasionally.

As discussed above, the ALJ carefully considered the medical reports from Plaintiff's doctors (AR 17-18). Indeed, Dr. Cooper and Dr. Bongutu's findings that Plaintiff was employable supports the ALJ's reliance on the state agency medical consultant's opinion that Plaintiff could occasionally lift and carry ten pounds (AR 430). Furthermore, Plaintiff does not challenge the ALJ's decision to afford less weight to the opinion of Dr. Kalata and greater weight to Dr. DeMeira (AR 18). Therefore, substantial evidence supports the ALJ's determination of Plaintiff's residual functional capacity.

Plaintiff's final argument is that ALJ erred in accepting the vocational expert's testimony that there were significant jobs that Plaintiff could perform in the local and national economy. The law is well established that "[w]hile the ALJ may proffer a variety of assumptions to [a vocational] expert, the vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the question accurately portrays the claimant's individual physical and mental impairments." *Podedworny v. Harris*, 745 F.2d 210, 218 (3rd Cir. 1984). In other words, "[a] hypothetical question must reflect all of a claimant's impairments that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence." *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3rd Cir. 1987), *citing, Podedworny, supra. See also Wallace v. Secretary of Health and Human Services*, 722 F.2d 1150 (3rd Cir. 1983). However, "[a]lthough hypothetical questions posed by an ALJ to a vocational expert must reflect a plaintiff's impairments, an ALJ need not include every unsubstantiated assertion of limitation in his hypothetical question." *Wilson v. Sullivan,* 1991 WL 311910 at *4 (W.D.Pa. 1991), *citing Chrupcala, supra.* Rather, he must include "only those limitations supported by objective medical evidence." *Id.*

Plaintiff argues that there are not a significant number of jobs that she could perform and the only jobs available are few and far between. Here, the functional limitation in the hypothetical question posed to the vocational expert by the ALJ were supported by substantial evidence. Consequently, the ALJ did not err in accepting the vocational expert's testimony that there were a significant number of jobs Plaintiff could perform in the local and national economy.

**IV. CONCLUSION**

For the foregoing reasons, substantial evidence supports the Commissioner's final decision and therefore it will be affirmed. An appropriate Order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

GLORIA BUCZYNSKI,     )
             )
    Plaintiff,    )
             )
  v.         )
             )  Civil Action No. 08-189 Erie
MICHAEL J. ASTRUE,    )
Commissioner of Social Security, )
             )
    Defendant.   )

## ORDER

_____AND NOW, this 2nd day of June, 2009, and for the reasons set forth in the accompanying Memorandum Opinion,

   IT IS HEREBY ORDERED that the Plaintiff's Motion for Summary Judgment [Doc. No. 7] is DENIED, and the Defendant's Motion for Summary Judgment [Doc. No. 9] is GRANTED. JUDGMENT is hereby entered in favor of Defendant, Michael J. Astrue, Commissioner of Social Security, and against Plaintiff, Gloria Buczynski.

            s/Sean J. McLaughlin
            United States District Judge

cm: All parties of record.